RIKARD v. O'REILLY.

O'REILLY v. FIDELITY & CASUALTY CO. OF NEW YORK.

SAME v. MONK.

8 Div. 726, 726–A, 726–B.

Supreme Court of Alabama.
June 11, 1936.

Rehearing Denied July 16, 1936.

J. E. Delony, Jr., and Kirk & Rather, all of Tuscumbia, for appellant Rikard.

R. L. Polk, of Sheffield, and E. W. Godbey, of Decatur, for appellee and cross-appellant O'Reilly.

KNIGHT, Justice.

We have before us three separate appeals, prosecuted by the respective appel-

lants from decrees of the circuit court of Colbert county on demurrers to cross-bills, and by agreement of the parties these appeals have been brought here by a single transcript. Each appellant has given a separate appeal bond, and each appeal relates to the administration of the estate of J. E. O'Reilly.

After the appeal was taken, F. H. Rikard, one of the appellants, died, and the appeal has been revived in the name of his personal representative, Mrs. Mattie Rikard.

It appears from the record that Mrs. Willie B. O'Reilly, in her right as the widow of the said J. E. O'Reilly, deceased, and also as the successor to the right, title, and interest of J. E. O'Reilly, Jr., the sole heir at law of said decedent, filed in the circuit court of Colbert county her bill of complaint against the said F. H. Rikard, the said Fidelity & Casualty Company of New York, surety on the bond of the said F. H. Rikard, as administrator of the estate of said J. E. O'Reilly, deceased, and against F. S. Monk and others, seeking a proper accounting and settlement of said estate.

In her bill, she prays that the administration of said estate be removed from the probate court to the circuit court, in equity, of Colbert county. Complainant charges many wrongs and misdoings to the administrator, the said F. H. Rikard. We may assume that the bill contains equity, in at least some of its aspects.

To this bill the said F. H. Rikard, the Fidelity & Casualty Company of New York, and the said F. S. Monk filed separate answers, and each made the same a cross-bill against the complainant, also sought to bring in, and to make, J. E. O'Reilly, Jr., who was not a party to the original bill, a party respondent to the cross-bills. However, at a later point in the proceedings, the said J. E. O'Reilly, Jr., was stricken as one of the parties respondent to the cross-bill, so that, at the time the decree was rendered, Mrs. O'Reilly was the sole respondent in the cross-bills filed by Rikard and Monk, but in the cross-bill filed by the Fidelity & Casualty Company of New York, Mrs. Octavia A. Hughston is joined with Mrs. O'Reilly as a party defendant.

It appears from the cross-bill filed by the said F. H. Rikard, aided by the admitted averments of the original bill, that J. E. O'Reilly, the husband of the complainant in the original bill, died in Colbert county, possessed of a rather large estate, consisting almost wholly of lands situated in said county, and in the state of Mississippi; that he was survived by the original complainant, his widow, and one son, J. E. O'Reilly, Jr., who was decedent's sole heir at law, and who was over twenty-one years of age at the time of his father's death; that on the day following the death of Mr. O'Reilly, the widow and son appealed to the cross-complainant, F. H. Rikard, to take charge of, manage, and control the properties of the estate; that the cross-complainant accepted employment from said parties, and agreed with them to take charge of the estate, and pay all the debts; and that it was further agreed between the three parties that enough of said property should be sold to pay off the indebtedness of the estate, and when that was accomplished, the remaining property was then to be turned over to the beneficial owners, the complainant and son.

It appears that the decedent owed considerable debts at the time of his death, and included among said debts was a debt due to the said F. S. Monk, in the sum of about $656.10, which was evidenced by note of decedent; that said Monk thereafter acquired by purchase· and transfer two other claims against said decedent's estate, viz., the claim of H. D. Davis and Minnie J. Gantt, which were secured by mortgages on certain real property, some of which was owned by J. E. O'Reilly, Sr., and some by J. E. O'Reilly, Jr.

None of the claims held by said Monk were filed as claims against said estate in accordance with the requirements of section 5818 of the Code, as amended by the Act of the Legislature of 1931, approved August 1, 1931. Gen.Acts 1931, p. 837.

In his cross-bill the said cross-complainant Rikard avers in substance that it was not in contemplation of the parties that there should be any administration of said estate under the statute, but, on the contrary, that he should by, and with the advice and consent of the widow and only heir, make sale of sufficient amount of the real estate and other assets to pay the debts of the estate; that it developed that there were some moneys due the decedent by one or more of the banks, and it became necessary to take out letters of administration in· order to collect the amount due from the banks to said estate.

It is further averred that the said Willie· B. O'Reilly and the said J. E. O'Reilly, Jr., advised the said cross-complainant that

they wanted the debts due to H. D. Davis, Minnie J. Gantt, and F. S. Monk paid (all of which claims were then owned by said Monk); that they agreed upon the land to be sold to pay said debts, and had the cross-complainant to procure an order for the sale of the lands, so selected for sale, in the probate court of Colbert county, and the same were accordingly sold, and said Monk pursuant to agreement with the complainant, son, and Rikard, purchased said lands at the sale, paying the amount of his debts against the estate therefor, and the evidences of the indebtedness were surrendered up to said cross-complainant.

The cross-bill avers in substance that in making each sale of real estate he consulted with and received the consent and approval of Mrs. O'Reilly and of her son.

It further appears from said cross-bill that all the debts of said estate have been paid by said Rikard, except about $3,000 due Octavia A. Hughston, and which is secured by mortgage; "and a small balance of about $203.00 owing to one F. M. Tapp for services rendered by him for and on account of the O'Reilly estate," and in this connection it is averred that the services rendered said estate by F. M. Tapp were by and with the consent of complainant and J. E. Reilly, Jr.

Along with and as a part of his cross-bill, the said cross-complainant Rikard submits a statement of all moneys and properties received by him and a statement of his disbursements, but which last statement omits to give much needed data to show that the disbursements were all proper.

In his cross-bill, Mr. Rikard admitted that he had not filed an inventory of the properties of said estate, as required by the statute, had not taken steps to have exemptions or dower set aside to the widow, had sold property to pay debts of the estate, and in doing so had not required that the claims should first be presented as required by law; that in paying said debts, in several instances, he avers he acted upon the wishes and suggestions of Mrs. O'Reilly and the said J. E. O'Reilly, Jr., who, rights of creditors aside, were the sole beneficiaries of said estate.

If the averments of the cross-bill are true, said Rikard, in so far as he failed to observe the duties enjoined upon him as administrator of said estate, acted, not in bad faith or in a reckless disregard of the law, but rather according to his understanding of the wishes of the sole beneficiaries of said estate.

In this proceeding no creditor is complaining, nor has any the right to complain as all debts have been paid, except the debt due to Octavia A. Hughston, which is secured by mortgage. She is not complaining.

It seems to be well settled that the heirs or distributees, as affects themselves, may be estopped, by their conduct, from insisting upon the statute of limitations.

In 24 Corpus Juris, § 921, p. 304, it is said: "Where the legatee or distributee induces a creditor to delay enforcement of his claim until it becomes barred by the statute of limitations, they are estopped by their conduct from pleading the statute; and it has been held that where they stand by without making inquiry into the affairs of the estate, or offering any objection, and permit the personal representative to pay a debt barred by the statute, they are bound by his payment and cannot object to his being credited therewith. The heirs also may by their conduct be estopped to plead the statute."

While we are not disposed to commit ourselves to all that is said above, yet we are of the opinion that it would be wholly unjust to permit the heir to advise or suggest to the administrator the payment of a claim, and, after it has been paid, to deny the validity of said claim, and thereby to secure to himself an unconscionable advantage of the administrator. In such a case he should be estopped upon every principle of right and fair dealing. Lengar v. Hazlewood, 11 Lea (Tenn.) 539.

As to the statute of nonclaim, it seems quite clear also that the heir or distributee may waive presentation of claims. 24 Corpus Juris, § 1035 (15), p. 372.

If the averments of the cross-bill filed by Rikard are true, we feel no hesitancy in holding that neither the complainant Mrs. O'Reilly, nor J. E. O'Reilly, Jr., can be heard to insist that debts of the estate paid by the administrator, at their suggestion or direction, were not properly filed as claims against said estate, nor that the cross-respondent Rikard should not be allowed credit for such payments on his settlement. Drye et al. v. Cunningham Medley & Co. (Ky.) 74 S.W. 272.

It would, therefore, appear that in the sale of the property to F. S. Monk, under

the decree of the probate court, and the payment of his claims against the estate of said J. E. O'Reilly, deceased, with the proceeds of said sale, pursuant to the request and direction of the complainant and the said J. E. O'Reilly, Jr., the cross-complainant Rikard should be protected, and that should follow whether he was acting in the transaction as agent of the complainant and said J. E. O'Reilly, Jr., or as administrator of the estate. Under the averments of the cross-bill, it would be inequitable, and contrary to the principles of fair dealing to sanction the presently made contention of the complainant with reference to the payment of the Monk claims.

For like reasons, complainant is estopped from insisting, if in fact there is such insistence, that the sale of the land to Lenice Coburn and the application of the proceeds to the payment pro tanto of the debt due Octavia A. Hughston was unwarranted, and that Rikard should not be allowed a credit for said payment.

The pleadings disclose no right in the complainant, Mrs. O'Reilly, to complain of the sale of the individual lands of J. E. O'Reilly, Jr., and the application of the proceeds to the payment of debts of the estate.

Whether Mr. Rikard, or his personal representative, shall be allowed fees or compensation in the matter of the handling of said estate will be developed at the hearing, and will depend, of course, upon whether Mr. Rikard was guilty of wrongdoing, neglect of duty, or other maladministration. Until the evidence develops the true situation, any pronouncement on the subject would be premature.

As to the claim or demand interposed by said cross-complainant for Mr. Tapp, it appears that cross-complainant has not paid this claim. Suffice it to say that, under the averments of the cross-bill, if Tapp has any claim, it is against the complainant and J. E. O'Reilly, Jr., personally. As to such claim, Tapp has his remedy at law. He is no party to this cause.

So, then, it would follow that the demurrers of the cross-respondent Mrs. O'Reilly to the cross-bill of F. H. Rikard as a whole were improperly sustained; these demurrers should have been overruled, and it will be here so ordered.

■ Inasmuch as the court sustained the cross-respondent's demurrer to the cross-

bill, and made no reference in the decree to grounds of demurrer going to parts of the cross-bill, only grounds of demurrer going to the sufficiency of the cross-bill as a whole will be considered. Sandlin v. Anders et al., 210 Ala. 396, 98 So. 299; Kelly v. Carmichael, 217 Ala. 534, 117 So. 67; Oden v. King, 216 Ala. 504, 113 So. 609, 54 A.L.R. 1413; Penton v. Brown-Crummar Inv. Co., 222 Ala. 155, 131 So. 14; Wood v. Estes, 224 Ala. 140, 139 So. 331; Florence Gin Co. v. City of Florence, 226 Ala. 478, 147 So. 417.

It follows, therefore, that the decree of the circuit court sustaining the demurrer of the cross-respondent to the cross-bill of F. H. Rikard will be reversed, and a decree here rendered overruling said demurrer.

Appeal of Mrs. O'Reilly from the decree overruling her demurrers to the cross-bill of the Fidelity & Casualty Company of New York will be affirmed, for the reasons stated for the reversal of the decree on the appeal of F. H. Rikard.

■ Being bound by any final decree against the administrator, there can be no question as to the right of the surety to make any defense to a judgment or decree against the administrator that could be made by the administrator. Dumas et al. v. Hollins, 228 Ala. 644, 154 So. 781; Ex parte Chapman, 225 Ala. 168, 142 So. 540; Hailey v. Boyd's Adm'r, 64 Ala. 399; Bean v. Harrison, 213 Ala. 33, 104 So. 244.

However, it may not be amiss to call attention to the fact that Octavia A. Hughston is no proper party defendant to said cross-bill, nor is there any right in the surety to insist on the foreclosure of her mortgage.

For the reasons stated for reversal of the decree on the appeal of F. H. Rikard, the decree of the circuit court on the appeal of Mrs. O'Reilly, overruling her demurrers to the cross-bill filed by F. S. Monk, is affirmed.

Reversed and rendered on appeal of F. H. Rikard.

Affirmed on both appeals of Mrs. O'Reilly.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.